IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM RAY FISHER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12CV868 |
| | ) | |
| CITY OF WINSTON-SALEM, | ) | |
| | ) | |
|     Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on the Motion to Dismiss [Doc. #37] of Defendant City of Winston-Salem ("Defendant"). Plaintiff William Ray Fisher ("Plaintiff") filed his Amended Complaint [Doc. #32] on July 8, 2014, after this Court gave Plaintiff leave to cure various deficiencies in his Original Complaint. Defendant filed the present Motion to Dismiss the Amended Complaint on August 15, 2014. The Motion is fully briefed and ripe for adjudication. For the reasons discussed below, the Court will deny in part and grant in part Defendant's Motion to Dismiss.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for a police officer position with the Winston-Salem Police Department ("WSPD") in 2009, when he was 56 or 65[1] years old. He was not selected for the position, nor

---

[1] Although Defendant notes that Plaintiff did not directly allege his age in his Amended Complaint, and that Plaintiff's age is listed both as 56 and 65 in different documents attached to his Amended Complaint, Plaintiff has explained in other filings that he was 65 at the time of his application and that the Equal Employment Opportunity Commission erroneously stated his age as 56. Regardless, either alleged age would place Plaintiff within the protections of the Age Discrimination in Employment Act, which covers individuals 40 years and older. See 29 U.S.C. § 631(a) (2012).

did he advance beyond preliminary application stages. Plaintiff alleged that the WSPD discriminated against him in the hiring process due to Plaintiff's age. Specifically, Plaintiff contended that the WSPD hired applicants who were less-qualified and younger than Plaintiff. In his Original Complaint [Doc. #1], Plaintiff asserted claims of age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"). Plaintiff named the WSPD and multiple individual WSPD officers as defendants in his Original Complaint. Later, Plaintiff filed a Motion to Amend his Complaint [Doc. #23] to substitute the City of Winston-Salem as the proper Defendant in this case. Meanwhile, the individual defendants and the WSPD brought Motions to Dismiss [Docs. #8, #14]. In a March 28, 2014 Memorandum Opinion and Recommendation [Doc. #26], the Magistrate Judge recommended denying Plaintiff's motion and granting the then-named Defendants' motions.

In a June 27, 2014 Memorandum Opinion and Order [Doc. #31], this Court adopted in part the Magistrate Judge's recommendation. This Court granted in part Defendants' motions, but allowed Plaintiff an opportunity to file an Amended Complaint curing deficiencies noted by the Court. The Court granted Plaintiff's Motion to Amend his Original Complaint to name the City of Winston-Salem as a proper Defendant in this matter, and the Court further allowed Plaintiff an opportunity to correct certain shortcomings in the allegations of his Original Complaint. The Court highlighted specific allegations Plaintiff made in his Response [Doc. #17] to the WSPD's initial Motion to Dismiss which the Court viewed as being potentially beneficial to enabling Plaintiff's claims to survive a Rule 12(b)(6) Motion to Dismiss, but those specific

2

details in Plaintiff's Response itself could not be considered in evaluating the sufficiency of Plaintiff's Original Complaint on a motion to dismiss.

Thus, the Court allowed Plaintiff to file an Amended Complaint containing information he supplied in his Response to the WSPD's initial motion to dismiss so as to cure the identified deficiencies of the Original Complaint. Plaintiff accordingly filed his Amended Complaint on July 8, 2014. On August 15, 2014, Defendant again moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(6), the Fourth Circuit instructs that "[w]e 'take the facts in the light most favorable to the plaintiff,' but 'we need not accept the legal conclusions drawn from the facts.' " Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 776 (4th Cir. 2013) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "Legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts," and a court does not consider "unwarranted inferences, unreasonable conclusions, or arguments" when evaluating the legal sufficiency of a complaint on a 12(b)(6) motion. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Additionally, in reviewing a motion to dismiss, the Court may consider documents attached to the complaint, as long as those documents are integral to the complaint and authentic. Bala v. Va. Dept. of Conservation and Recreation, 532 F. App'x 332, 334 (4th Cir. 2013) (quoting Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007)); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d

3

176, 180 (4th Cir. 2009).

"[T]he complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). Such "facial plausibility" is satisfied when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955) (citations omitted). Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.' " Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 556 U.S. at 683, 129 S. Ct. 1937).

When evaluating a *pro se* plaintiff's pleadings, a court should liberally construe the plaintiff's allegations and hold the *pro se* plaintiff "to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 2081 (2007) (internal quotations omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)). Nonetheless, the Court "may not be an advocate for a *pro se* plaintiff and must hold the complaint to certain minimal pleading standards."

4

Hongan Lai v. Dep't of Justice, No. 5:13cv00033, 2013 WL 3923506, at *3 (W.D. Va. July 29, 2013) (citing Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985); Switzer v. Town of Stanley, No. 5:10cv00128, 2010 WL 4961912, at *2-3 (W.D. Va. Dec. 1, 2010); Holsey v. Collins, 90 F.R.D. 122, 128 (D.Md. 1981)).

III.   DISCUSSION

In challenging Plaintiff's Amended Complaint, Defendant asserts that Plaintiff has failed to state a claim for (1) age discrimination, (2) retaliation, and (3) intentional infliction of emotional suffering. In assessing whether Plaintiff has sufficiently pled each of these claims, the Court takes particular note of its previous instructions to Plaintiff in filing an Amended Complaint.

  A.   Plaintiff's Discrimination Claim

In dismissing Plaintiff's Original Complaint, the Court highlighted Plaintiff's need to sufficiently allege the qualifications of the desired position and that he met those qualifications. In its present Motion to Dismiss, Defendant in essence argues that Plaintiff's allegations as to such qualifications fail for lack of specificity.

The ADEA prohibits employers from refusing to hire an individual because of that individual's age. 29 U.S.C. § 623(a)(1) (2012). "Age must be the 'but-for' cause of the employer's action for the action to violate the ADEA." Buchhagen v. ICF Intern., Inc., 545 F. App'x 217, 220 (4th Cir. 2013) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009)). A plaintiff may prove a claim for age discrimination with either (1) direct evidence of discrimination, or (2) through the indirect

5

method of proof established under the pretext framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); Hill v. Lockheed Martin Logistics, Mgmt., Inc. 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc); Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 238 (4th Cir. 1982) (adopting the McDonnell Douglas framework for use in ADEA cases). A plaintiff relying on the indirect method of proof supplied by McDonnell Douglas initially must provide evidence as to each element of a prima facie discrimination case. In a refusal-to-hire case such as the present matter, the plaintiff must show (1) he was at least 40 years old; (2) he was qualified for a job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) the position remained open and the employer continued to seek or accept applications from individuals with his qualifications but who were outside the protected class of individuals 40 years and older. Henson v. Liggett Grp., Inc., 61 F.3d 270, 274 (4th Cir. 1995) (citations omitted); Cepada v. Bd. of Educ. of Balt. Cnty., 814 F. Supp. 2d 500, 512 (D. Md. 2011) (citing Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006)); see Jordan v. Shaw Indus., Inc., 131 F.3d 134, 1997 U.S. App. LEXIS 33589, at *18-19 (4th Cir. 1997) (unpublished table decision) (applying the same prima facie elements to both Title VII and ADEA discrimination claims).

However, a plaintiff does not have to choose which means of proof he will use at trial when he crafts his initial complaint; through the discovery process, a plaintiff may secure direct evidence of discrimination, thus obviating the need to prove each element of the indirect, prima facie case. See Craddock v. Lincoln Nat. Life Ins. Co., 533 F. App'x 333, 335-36 (4th Cir. 2013) (citing Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1

6

(2002)). "[A] plaintiff need not set out the elements of a prima facie case for an indirect method of proof in order to survive a motion to dismiss." Craddock, 533 F. App'x at 336 n.3. The prima facie case serves as a "flexible evidentiary standard that should not be transposed into a rigid pleading standard for discrimination cases." Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998, 152 L. Ed. 2d 1.

In the present matter, Plaintiff's Amended Complaint has met the requisite pleading standards for an age discrimination claim. Taking Plaintiff's allegations as true, the narrative of events in his Amended Complaint depicted an application process whereby Plaintiff was initially "on the list to be tested" for the next class of police officer cadets, but was not tested after officers with the WSPD discovered his age. (Pl.'s Amend. Compl. [Doc. #32], at 1.) Plaintiff included factual allegations of other applicants with qualifications similar or inferior to Plaintiff's who were nonetheless tested and hired. Plaintiff's description of oral and e-mail conversations with WSPD officers, along with his chronology of events, gives rise to a plausible claim that he did not advance in the hiring process and was ultimately not hired because of his age.

Defendant primarily challenges whether Plaintiff has sufficiently alleged the relevant qualifications for the position and that he was in fact qualified. As previously instructed by the Court, Plaintiff submitted with his Amended Complaint documents explaining the qualifications for the WSPD police officer position, as well as the Rating Scale System used by the WSPD in evaluating applicants.[2] As discussed in greater detail below, these attachments to Plaintiff's

---

[2] Specifically and as is relevant, Plaintiff attached print-outs of the WSPD's respective webpages listing the police officer qualifications and describing application steps for police officer applicants. (Attach. to Pl.'s Amend. Compl. [Doc. #32-1], at 16-17.) Plaintiff also attached a document from the WSPD Recruiting Unit detailing how the Scale Rating System

7

Amended Complaint, considered along with the allegations in the Amended Complaint, demonstrate that Plaintiff could plausibly prove that he was qualified for the position, and in turn, that he was discriminated against due to his age.

In alleging that he was qualified for the position, Plaintiff systematically alleged that he met each of the qualifications of the police officer position as advertised on the WSPD website. Those qualifications are: (1) have United States citizenship; (2) be at least twenty-years old; (3) have obtained a high school diploma or GED; (4)"[b]e in good physical condition and of good moral character with no felonies or serious misdemeanors," and have "[n]o DWI convictions within the last 5 years;" (5) already have or be capable of obtaining a North Carolina Driver's license; and (6) "[p]ass an extensive background investigation." (Attach. to Pl.'s Amend. Compl. [Doc. #32-1], at 16-17.)

Defendant first specifically argues that Plaintiff's allegations are conclusory as to the qualification that an applicant must pass an extensive background check. Although not included on the qualifications webpage, the WSPD explains on its "Joining Our Team: Steps of the Application Process (Sworn)" webpage that at Step Six, a background investigation is completed and covers areas including "employment history, criminal history/involvements, driving history, civil history, credit, military service record, educational attainments, etc." (Id. at 17.) Plaintiff has included several allegations about having no criminal history, no traffic citations, and no records of poor work performance.[3] Such allegations plausibly indicate that Plaintiff could pass

---

operates. (Id. at 14-15.)

[3] Plaintiff also explains that his discharge from the military was a hardship discharge in light of family circumstances at the time.

a background investigation as to areas identified by the WSPD on its website.[4]

Defendant next contends that Plaintiff did not specifically allege that he could pass the physical agility test administered to police officer recruits. However, the WSPD website qualifications do not mention a requirement of passing a physical agility test, and instead, the qualifications only demand that an applicant "[b]e in good physical condition." (Attach. to Pl.'s Amend. Compl. [Doc. #32-1], at 16.) On its webpage documenting the application step—which again, was attached to Plaintiff's Amended Complaint—the WSPD notes that physical agility testing is conducted at Step Five of the application process, but there is no indication of what the tests entail or what is considered a passing performance. Indeed, there is not even a statement that applicants must "pass" the physical agility test; instead, the webpage simply states that applicants "undergo preliminary testing to assist the agency in determining the suitability for each applicant applying for the position of Police Officer." (Id. at 17.) Plaintiff's statements regarding his physical fitness, including a letter from a physician attesting to his being "physically very fit," sufficiently allege he was in good physical health and capable of being administered the Physical Agility test, and of rendering a satisfactory performance upon being tested. (Id. at 4.)

Defendant also challenges Plaintiff's discussion of the WSPD Ratings Scale in his Amended Complaint. As is relevant here, the Ratings Scale accounts for applicants' academic

---

[4] As is relevant to Plaintiff's discrimination claim, the Court also notes that Plaintiff has also alleged that the WSPD deviated from its normal application process by conducting a background check on Plaintiff before giving him an interview or administering the physical and written tests described in Step Five of the WSPD's application process. (Attach. to Pl.'s Amend. Compl. [Doc. #32-1], at 17.)

achievements, law enforcement work experience, traffic citations, criminal or illegal activity, and other factors. The Ratings Scale system divides applicants into Rating Scales of 1, 2, and 3, with Rating Scale 3 representing the best score. Plaintiff apparently received a Rating Scale of 2, but candidates with similar qualifications were advanced ahead of him. Plaintiff specifically alleged that "many of the younger candidates who were accepted into the academy also [like Plaintiff] enrolled in college but never graduated," and "some younger applicants who . . . were hired as police cadets had three or more traffic citations and at least one had a underage drinking charge." (Pl.'s Amend. Compl. [Doc. #32], at 2.) In contrast, Plaintiff asserted that he has "an excellent driving record" and no criminal history. (Id. at 3.) Plaintiff provided specific allegations regarding other applicants' limited work histories, and more generally alleged that "more than twenty applicants who were hired . . . were not near as qualified . . . as Plaintiff," but were "just younger." (Id. at 3.) To the extent the Ratings Scale is relevant to whether or not Plaintiff was qualified,[5] Plaintiff sufficiently alleged that certain positive factors enumerated in the Ratings Scale applied to him that did not apply to others, and that certain negative factors that applied to him also applied to other applicants who advanced.

---

[5] The Court notes that the Ratings Scale does not purport to set out requirements for hiring, and instead appears to be a tool used to assess applicants in a particular pool against other applicants. Technically, an applicant who received any Rating Scale score might still advance in the hiring process. Regardless, to the extent the superior Ratings Scale 3 factors may effectively constitute required qualifications for hiring, at this stage, Plaintiff has sufficiently alleged that he met those qualifications and that others who were hired did not. To the extent it may be relevant, Defendant may be able to produce evidence to indicate that Plaintiff did not deserve a Ratings Scale of 3 as this case progresses, but the Motion to Dismiss stage is not the proper time to resolve a factual dispute. E.g. Bala, 532 F. App'x at 335.

10

Defendant nonetheless asserts that Plaintiff did not allege that his past police experience[6] was with "a like agency," which is one of the positive factors attributed to applicants eligible for a Rating 3 score.[7] However, the WSPD's rating system does not define what "like agency" means. Defendant in essence attempts to demand a higher level of factual specificity than is required to survive a Motion to Dismiss. See Miller v. Carolinas Healthcare Sys., 561 Fed. Appx. 239, 240-41 (4th Cir. 2014) ("As the Supreme Court has recognized, specific facts are not necessary in a pleading, and a plaintiff need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " (quoting Erickson, 551 U.S. at 93, 127 S. Ct. at 2200)). For purposes of a Motion to Dismiss, Plaintiff has articulated sufficient factual allegations that plausibly indicate he worked with similar law enforcement agencies by working with a sheriff's department and township police departments.

Taking Plaintiff's allegations as true, the Court finds that Plaintiff's Amended Complaint sufficiently alleged a claim for age discrimination in hiring under the ADEA. Plaintiff corrected the previous pleading deficiencies identified by the Court by adequately alleging that he was qualified for the position and that other individuals with the same qualifications or worse qualifications were hired while he was not. As noted by this Court in its June 27 Memorandum

---

[6] Defendant's argument that Plaintiff did not adequately allege the specifics of his past law enforcement experience and that this information was supplied to Defendant is unfounded. Plaintiff alleged that he provided the WSPD with paperwork including "all information on my previous law enforcement career," then listed the relevant experience. (Pl.'s Amend. Compl. [Doc. #32], at 1.)

[7] Specifically, this factor under Rating 3 is described as follows: "Applicant has prior Law Enforcement Experience or possesses a degree related to the Criminal Justice Field. Prior experience must be with a 'like agency' and service records must reflect positive service with no sustained violations." (Attach. to Pl.'s Amend. Compl. [Doc. #32-1], at 14.)

Opinion and Order [Doc. #31], the Fourth Circuit has deemed similar allegations sufficient in a number of recent, albeit unpublished, decisions. See Craddock, 533 F. App'x at 335-36 (holding that the plaintiff sufficiently alleged discriminatory termination case by alleging (1) that the defendant "trained all [the] younger employees in [the plaintiff's] department to use a scanner, but despite her requests did not train her," and (2) that the defendant refused to consider rehiring her); Bala, 532 F. App'x at 335 (holding complaint as sufficient to state a Title VII discriminatory failure to interview claim based on plaintiff's allegations of his qualifications for the position, that less qualified applicants were selected for the interview, and that the screening panel for the position consisted of only one Caucasian male); Dolgaleva v. Va. Beach City Pub. Sch., 364 F. App'x 820, 827 (4th Cir. 2010) (holding sufficient for a national-origin discrimination claim allegations that the plaintiff was the most qualified applicant for the position applied for, that the defendant deviated from its usual hiring procedures in hiring another candidate before the plaintiff's scheduled interview, and that the plaintiff's Russian ancestry had been held against her in the hiring decision as evidenced by an employee of the defendant telling the plaintiff that she was not considered for the position because "her Russian credentials were worthless").

Plaintiff's Amended Complaint has alleged facts that may ultimately be proven with direct or indirect evidence to establish his claim of age discrimination. Plaintiff's allegations (1) that he was informed he was on the list to be tested for the next class of police officer cadets, (2) that he was not tested after officers with the WSPD learned his age, and (3) that he was told that the WSPD previously hired a recruit around his age and had to fire that recruit due to performance

12

issues, may lead to direct evidence of discrimination. As to the indirect method of proof, the Court notes that Plaintiff has made allegations supporting an initial prima facie case in that Plaintiff has alleged (1) he was more than 40 years old at the time of application, (2) he was qualified to be an officer with the WSPD, (3) he was not hired and did not advance in the hiring process, and (4) the position remained open and applicants with the same or inferior qualifications to Plaintiff were accepted.

Thus, the Court will deny Defendant's Motion to Dismiss as to Plaintiff's age discrimination claim under the ADEA because Plaintiff pled allegations with sufficient particularity to support an age discrimination claim.

B.     Plaintiff's Retaliation Claim

In his Original Complaint, Plaintiff asserted a separate retaliation claim in addition to his discrimination claim. Defendant asserts that Plaintiff has abandoned his retaliation claim since Plaintiff failed to even mention his retaliation claim in his Amended Complaint. In dismissing Plaintiff's claims as stated in his Original Complaint, this Court previously granted Plaintiff leave to amend all deficiencies discussed by the Court, including allegations pertinent to Plaintiff's retaliation claim. Despite the Court specifically identifying the curable deficiencies as to Plaintiff's retaliation claim, Plaintiff failed to correct or even include a retaliation claim in his Amended Complaint.

Plaintiff's Response to the present Motion to Dismiss reveals that Plaintiff believed his retaliation claim was dismissed by the Court. Plaintiff, by failing to amend his Complaint to cure the identified deficiencies of the retaliation claim, is deemed by the Court as having effectively

abandoned this claim.

  C.  Plaintiff's New Claim of Emotional Suffering

In the "Relief" section of Plaintiff's Amended Complaint, Plaintiff requested "$300,000.000 for emotional pain, suffering and humiliation due to an article in the Winston-Salem Journal and other area papers perhaps read by hundreds of thousands of people in which City Attorneys refer to him as a Money Grubbing Codger." (Pl.'s Amend. Compl. [Doc. #32], at 7.) Defendant interprets this as a claim for intentional infliction of emotional harm and argues that the statement cited by Plaintiff is not a quote from the City Attorney's office nor the Defendant in this case.

Under North Carolina law, the elements of the tort of intentional infliction of emotional distress ("IIED") are "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." Guthrie v. Conroy, 152 N.C. App. 15, 21, 567 S.E.2d 403, 408 (2002) (quoting Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992)). Alternatively, an IIED claim may also be shown where "[a] defendant's actions indicate a reckless indifference to the likelihood that [he] will cause severe emotional distress." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 488, 340 S.E.2d 116, 119-120 (1986) (quoting Dickens v. Puryear, 302 N.C. 437, 452-53, 276 S.E.2d 325, 335 (1981)). The requisite extreme and outrageous conduct must be more than "mere insults, indignities, and threats." Guthrie, 152 N.C. App. at 22, 567 S.E.2d at 409 (quoting Hogan, 79 N.C. App. at 493, 340 S.E.2d at 123); see Johnson v. Colonial Life & Accident Ins. Co., 173 N.C. App. 365, 373, 618 S.E.2d 867, 872 (2005) (finding threats of job loss and other "insulting and offensive" conduct

14

to be insufficient for an IIED claim). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Foster v. Crandell, 181 N.C. App. 152, 168, 638 S.E.2d 526, 537 (2007) (quoting Johnson, 173 N.C. App. at 373, 618 S.E.2d 867, 872). Whether the conduct described in an IIED claim "may reasonably be found to be sufficiently outrageous as to permit recovery," is a question of law. Brown v. Burlington Indus., Inc., 93 N.C. App. 431, 436, 378 S.E.2d 232, 235 (1989) (quoting Hogan, 79 N.C. App. at 491, 340 S.E.2d at 121).

Plaintiff's allegation that the "City Attorneys refer[red] to him as a Money Grubbing Codger" in the newspaper article does not rise to the level of extreme and outrageous conduct. Instead, even if true, this statement falls in the realm of "insults, indignities, and threats." See Guthrie, 152 N.C. App. at 22, 567 S.E.2d at 409. Moreover, to the extent that Plaintiff has submitted a copy of the newspaper article at issue, the article corroborates Defendant's assertion that the statement complained of by Plaintiff cannot be attributed to the City Attorney's Office or Defendant. The statement appears in the general text of the article and not as a quote from a particular speaker, as follows: "Further in its answers, the city calls his claims 'vague and sparse' and says that if the court allows the suit to proceed, money-grubbing codgers will try to sue the pants off the city at every turn." (Attach. to Pl.'s Amend. Compl. [Doc. #32-1], at 14.) This statement does not specifically name Plaintiff as a "money-grubbing codger," thus undercutting any suggestion that the statement constituted extreme or outrageous conduct intentionally directed toward Plaintiff.

15

While the newspaper may have used colorful language in reporting on this lawsuit, such language does not support a claim that Defendant caused Plaintiff humiliation by extreme and outrageous conduct. The Court finds that Plaintiff has not sufficiently alleged that Defendant engaged in extreme and outrageous conduct, and thus his Amended Complaint fails to assert an intentional infliction of emotional distress claim upon which relief may be granted.

IV.     CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has sufficiently pled an age discrimination claim. However, the Court further finds that Plaintiff has abandoned his retaliation claim, and Plaintiff has insufficiently pled an intentional infliction of emotional distress claim.

Accordingly, the Court will grant in part and deny in part Defendant's Motion to Dismiss [Doc. #37]. Specifically, the Court will deny Defendant's Motion as to Plaintiff's age discrimination claim and grant Defendant's Motion as to Plaintiff's intentional infliction emotional distress claim. Finally, the Court deems Plaintiff's retaliation claim as having been abandoned by Plaintiff's failure to assert this claim in his Amended Complaint.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [Doc. #37] is GRANTED IN PART and DENIED IN PART.

This, the 4th day of February 2015.

_____
United States District Judge